WILLIAM J. KEY and FREDA A. KEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Key v. Commissioner
Docket No. 17831-81
United States Tax Court
T.C. Memo 1988-359; 1988 Tax Ct. Memo LEXIS 389; 55 T.C.M. (CCH) 1506; T.C.M. (RIA) 88359; August 9, 1988
Joellyn R. Cattell, for the respondent PARKER MEMORANDUM OPINION PARKER, Judge: In a statutory notice of deficiency dated April 14, 1981, respondent determined a deficiency in petitioners' Federal income tax for the year 1974 in the amount of $ 4,412.22 and an addition to the tax for fraud under section 6653(b) [1] in the amount of $ 2,206.11. *390 Virtually from the day their petition was filed, petitioners have failed and refused to cooperate with their own counsel and this Court. That led to the Court's granting their counsel's motion to withdraw and granting respondent's motion to dismiss for failure properly to prosecute as to the deficiency. Rule 123(b). After an involved procedural history, there still remains the matter of the fraud addition, which respondent asks the Court to decide based upon the facts deemed admitted under Rule 90(c). [2]
*391 Under section 6653(b), respondent has the burden to prove by clear and convincing evidence that there is an underpayment of tax and that some portion of the underpayment is due to fraud with the intent to evade tax. Sec. 7454(a); Rule 142(b); ; . However, respondent's burden of proof can be met by facts deemed admitted under Rule 37(c) or under Rule 90(c). , affg. a Memorandum Opinion of this Court; ; ; . Here, the facts in respondent's request for admissions are deemed admitted for all purposes in this case. Rule 90(c); , affd. on another issue . Based upon these deemed admitted facts, we conclude that respondent has satisfied his burden to establish fraud by clear and convincing evidence. [3]
*392 The facts established by the pleadings and the deemed admissions are as follows: Petitioners William J. Key and Freda A. Key, husband and wife, resided in Philadelphia, Pennsylvania at the time their petition in this case was filed. Petitioners filed a joint Federal income tax return (Form 1040) for the year 1974, reporting petitioner-wife's W-2 income from her employment with the U.S. Department of Housing and Urban Development (HUD) and reporting only $ 145 of income for petitioner-husband. During the year 1974, petitioners maintained their own personal, financial and tax records. While their 1974 tax return was prepared by H&R Block, all information on that return had been furnished to H&R Block by petitioners. During the year 1974, petitioners owned a rental property, a brick residence, on North 12th Street in Philadelphia. During that year petitioner-husband was employed by Ellis' Body Shop. None of the income from those jobs was reported on petitioners' 1974 return. During the audit of their 1974 return petitioners refused to turn over their records to the internal revenue agent or to otherwise cooperate in the investigation of their tax liabilities. Petitioners *393 either failed to maintain or failed to submit for examination by respondent's agents complete and adequate books and records for their income-producing activities for the year 1974. Respondent determined petitioners' correct taxable income for the year 1974 using the net worth and nondeductible personal expenditures method of proof. On December 31, 1973, petitioners had zero undeposited cash on hand. Petitioners had a net worth of $ 25,828.08 on December 31, 1973, and a net worth of $ 29,641.94 on December 31, 1974, for an increase in net worth that year of $ 3,813.86. Petitioners reported gross income of $ 10,457 less a rental loss of $ 582 and thus adjusted gross income of $ 9,875 for the year 1974. During the year 1974, petitioners made personal nondeductible cash expenditures amounting to $ 25,771.44, of which only $ 3,071.15 came from nontaxable income sources. Petitioners' correct adjusted gross income for the year 1974 was at least $ 26,514.15, [4] and petitioners had unreported net earnings of at least $ 16,639.15, unreported taxable income of $ 15,926.93, [5] and an underpayment of tax of at least $ 4,412.22. *394 While the deemed admitted facts in this case give a bare bones factual picture, we nonetheless think it suffices. See n.3, supra. Petitioners failed to report a substantial amount of their taxable income, furnished inadequate and incomplete information to their return preparer, refused to present their books and records during the audit, failed to cooperate in the investigation of their tax liabilities, and wholly failed to cooperate at any step in the proceedings in this Court. Accordingly, we hold that respondent has established fraud by clear and convincing evidence. To reflect the Court's earlier dismissal as to the deficiency and the above holding as to the fraud addition, Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in question, and all "Rule" references are to the Tax Court Rules of Practice and Procedure. ↩
2. Petitioners secured the services of their counsel through the Lawyer Reference Service of the Philadelphia Bar Association and entered into a modest fee agreement (for payment over a period of time) with him, paying only a nominal amount initially. Once counsel had prepared and filed their petition in this Court, petitioners thereafter refused and failed to respond to his written or telephonic communications in regard to preparation of a reply to respondent's answer, in regard to responses to either informal or formal discovery, or in regard to any other preparations for trial or other disposition. Because of petitioners' lack of cooperation and recalcitrance, their counsel suggested that respondent's counsel also serve copies of the various documents and motions on petitioners individually. That was done but also to no avail. As a result of petitioners' failure and refusal to cooperate and recalcitrance, there was no response by them or on their behalf to respondent's request for admissions, to respondent's request for interrogatories, or to respondent's request for production of documents. When petitioners also failed to appear at the trial of their case, the Court granted their counsel's motion to withdraw from the case and at that time treated respondent's motion to compel answers to interrogatories and motion to compel production of documents as moot. Those motions were deemed moot because the Court indicated on the record that it would grant respondent's motion to dismiss for failure properly to prosecute, and in a subsequent order the Court did so. However the Court did not relieve petitioners of the facts deemed admitted under Rule 90(c). Also, the Court did not grant respondent's motion as to the fraud addition, so the case was subsequently again calendared for trial. Petitioners again failed to appear. At that time respondent submitted the case on the basis of the facts deemed admitted pursuant to Rule 90(c). , affd. on another issue . Respondent submitted a memorandum brief to which petitioners failed to reply. While the petition adverts to a possible innocent spouse claim under section 6013(e) on behalf of petitioner Freda A. Key, we note that she (as well as her husband) has totally failed to take any action at each and every stage of these proceedings. Accordingly, we deem any such innocent spouse issue to be conceded or abandoned by her. Moreover, the deemed admitted facts show nondeductible cash expenditures by petitioners of at least $ 22,700.29, and since her reported gross↩ wage income ($ 10,301 of the total $ 10,446 reported) was so much less, it is clear that she benefited from the omitted income and that it is highly unlikely that she could satisfy the section 6013(e)(1)(D) requirement in any event. 3. We think it would also have been appropriate in this case to enter a default against petitioners pursuant to Rule 123(a) for both the deficiency and the section 6653(b) addition to tax. See . Unlike Gordon,↩ here petitioners never filed a reply. Here petitioners' default dates virtually from the date of filing of respondent's answer, as shown by the fact that petitioners failed and refused to cooperate with their counsel to prepare a reply to the affirmative allegations of fraud in that answer, with the result that no reply could be filed. Of course, under Rule 37(c), where a reply is not filed "the affirmative allegations in the answer will be deemed denied unless the Commissioner * * * files a motion that specified allegations in the answer be deemed admitted." Respondent did not choose that route, but chose to follow Rule 90 here. Nevertheless, implicit in the Rule 37(c) procedure for treating a taxpayer's failure to file a reply as a denial is the purpose of getting issue joined and moving the case forward; that deemed-denied procedure is not designed to shelter a taxpayer from what would otherwise be a total default on his part, as in this case. Here, instead of merely deeming respondent's discovery motions moot (which avoided further necessary and no doubt equally futile paper work), the Court could very well have acted under Rule 123(a). The effect of a default is that all the well-pleaded affirmative allegations of fraud in respondent's answer would be admitted. See discussion and cases cited in , affd. . The affirmative allegations of fact in respondent's answer, which we could have deemed admitted in the default situation in this case, give a fuller statement of the fraud allegations than the request for admissions. While the statements in the request for admissions are a somewhat stripped-down, lean version, we have concluded that they will suffice here. Hence we need not further explore the default route, with its more expansive statement of well-pleaded facts. 4. This figure is composed of the increase in net worth of $ 3,813.86 plus the nondeductible cash expenditures of $ 25,771.44 less the nontaxable sources of $ 3,071.15, i.e., plus $ 22,700.29. The resulting $ 26,514.15 adjusted gross income figure minus the adjusted gross income reported on petitioners' tax return constitutes the unreported net earnings of $ 16,639.15, as follows: $ 3,813.86 + 22,700.29
$ 26,514.15 9,875.00
$ 16,639.15 ↩
5. Respondent found that petitioners had understated their itemized deductions by $ 1,212.02 and overstated the medical deduction (because of the increase in adjusted gross income) by $ 499.80, for a net decrease in taxable income of $ 712.22. ↩